## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| **FAIR HOUSING CENTER OF CENTRAL INDIANA, INC.,** ) | **CASE NO. 1:22-cv-00612** |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | |
| **M&J MANAGEMENT COMPANY, LLC, d/b/a THE SEXTON COMPANIES; SEXTON CARLYLE LLC; REMINGTON COURT LLC; SEXTON WINDSOR, LLC,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

### COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF

### I.  INTRODUCTION

1.      Plaintiff Fair Housing Center of Central Indiana, Inc. ("Fair Housing Center"), an

organization dedicated to ensuring equal opportunity in housing, brings this action against

defendants for injunctive, declaratory, and monetary relief for discriminating against families

with minor children based on their familial status, in violation of the Fair Housing Act and

related, supplemental state laws.

### II.  JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over plaintiff's federal claims pursuant

to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. §3613. This Court has supplemental jurisdiction to

consider plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims are

related to plaintiff's federal law claims and arise out of a common nucleus of facts. Plaintiff's

state law claims are related to plaintiff's federal claims such that those claims form part of the

same case or controversy under Article III of the United States Constitution.

3.      Venue is proper under 28 U.S.C. §1391 because all defendants reside in this

judicial district; a substantial part of the events alleged in this complaint occurred in this judicial

district; and, a substantial number of the subject properties are situated in this judicial district.

### III.  PARTIES

4.      Plaintiff Fair Housing Center of Central Indiana, Inc. is a private, nonprofit

Indiana corporation working to ensure equal housing opportunities by eliminating housing

discrimination through advocacy, enforcement, education, and outreach. It is the only private,

nonprofit fair housing agency in the State of Indiana. Its offices are located in Indianapolis. The

Fair Housing Center has diverted significant staff time and resources to investigate defendants'

discriminatory housing practices, as alleged herein.

5.      Defendant M&J Management Company, LLC is a domestic limited liability

corporation registered in the State of Indiana with its principal office located in Indianapolis.

Sexton Companies is an assumed name of M&J Management Company, LLC. According to

Sexton Companies' website, www.sextonproperties.com, Sexton Companies has been in the

business of developing and renting apartment complexes in Indiana and several other states since

1962, including two of the largest apartment complexes in the State of Indiana. Defendant M&J

Management Company, LLC, doing business as Sexton Companies, serves as the management

company at all three of the apartment complexes identified herein.

6.      Defendant Sexton Carlyle LLC is a domestic limited liability corporation registered in the State of Indiana with its principal office located in Indianapolis. Its principal member is G. Marlyne Sexton. Defendant Sexton Carlyle LLC is the owner of record of the apartment complex located at 951 Carlyle Lane in Indianapolis, known as the Carlyle Court Apartments. The Carlyle Court Apartments contain approximately 302 dwelling units available to rent to members of the public. The Carlyle Court Apartments and each of its dwelling units are dwellings within the meaning of the Fair Housing Act, 42 U.S.C. § 3602.

7.      Defendant Sexton Windsor LLC is a domestic limited liability corporation registered in the State of Indiana with its principal office located in Indianapolis. Its principal member is G. Marlyne Sexton. Defendant Sexton Windsor LLC is the owner of record of the apartment complex located at 7302 Queen Anne Court in Indianapolis, known as the Windsor Court Apartments. The Windsor Court Apartments contain approximately 342 dwelling units available to rent to members of the public. The Windsor Court Apartments and each of its dwelling units are dwellings within the meaning of the Fair Housing Act, 42 U.S.C. § 3602.

8.      Defendant Remington Court LLC is a domestic limited liability corporation registered in the State of Indiana with its principal office located in Indianapolis. Information available from the Indiana Secretary of State does not include the identity of the principal member, but the registered agent is G. Marlyne Sexton. Defendant Remington Court LLC is the owner of record of the apartment complex located at 212 Remington Court North Drive in Mishawaka, Indianapolis, known as the Remington Court Apartments. The Remington Court Apartments contain approximately 164 dwelling units available to rent to members of the public. The Remington Court Apartments and each of its dwelling units are dwellings within the

meaning of the Fair Housing Act, 42 U.S.C. § 3602.

9.      In committing each of the discriminatory or unlawful acts alleged in this

complaint, each defendant acted as the agent or co-conspirator of each other defendant.

### IV.  THE FAIR HOUSING ACT'S FRAMEWORK AND HISTORY

10.      The Fair Housing Act was enacted in 1968. In 1988, Congress amended the Fair

Housing Act and added new protected classes, including families with minor children. Congress

added "familial status" to the list of protected classes after hearings demonstrating that a

significant portion of rental housing providers in the United States refused to rent to families

with children. The hearings also established that many rental housing providers who rented to

such families placed unreasonable restrictions on them, including numerical caps on the number

of children or household members, higher rent and deposit charges, and age restrictions. As a

result of these practices, which were legal before the passage of the Fair Housing Amendments

Act of 1988, families with children encountered a lower supply of rental housing at substantially

higher costs than other Americans.

11.      Congress added the provisions barring discrimination against families

with children as part of the Fair Housing Amendments Act of 1988. The FHA

defines "familial status" as –

> one or more individuals (who have not attained the age of 18 years) being
> domiciled with — (1) a parent or another person having legal custody of such
> individual or individuals; or (2) the designee of such parent or other person having
> such custody, with the written permission of such parent or other person. The
> protections afforded against discrimination on the basis of familial status shall
> apply to any person who is pregnant or is in the process of securing legal custody
> of any individual who has not attained the age of 18 years.

42 U.S.C. § 3602(k).

12.     The FHA outlaws discriminatory housing practices that have the purpose or effect of discriminating against families with children, including numerical occupancy restrictions. Reasonable limitations on occupancy of a dwelling imposed by a state or local government are exempted, as long as they are applied to all occupants and do not operate to discriminate on the basis of familial status. 42 U.S.C. § 3607 (b)(1); H.R. Rep. No. 711, 100th Congress, 2d Sess. 31 (1988).

13.     The Carlyle Court and Windsor Court Apartments are located in Marion County. The Marion County Housing Code (MCHC) sets minimum standards for the amount of space needed for human occupancy, which is considered sufficient to correct and prevent public health hazards, safety hazards, and other legitimate objectives. The MCHC provides that a dwelling may not be inhabited unless:

> "At least one hundred fifty square feet of floor space shall be provided for the first occupant. An additional one hundred square feet of floor space shall be provided for each additional occupant."

MCHC § 10-801(a).

14.     St. Joseph County, where the Remington Court Apartments are located, has adopted the 2020 Indiana Residential Code, which does not contain any residential occupancy limits.

15.     The Fair Housing Act does not set, and the United States Department of Housing and Urban Development (HUD) does not endorse, any explicit standard or rule governing numerical occupancy restrictions imposed by a housing provider. Instead, HUD has instructed housing providers who wish to impose numerical occupancy restrictions to consider a variety of

factors, including the local housing code requirements, square footage of the unit, configuration of the unit, ages of children, and local housing code regulations. Keating Memo, 63 Fed.Reg. 70982 (12/18/1998).

16.    Using the factors set forth by HUD, the apartments at Carlyle, Windsor, and Remington Court Apartments should accommodate more occupants than the defendants currently allow.

## V. <u>FACTS</u>

### A.    The Carlyle Court Apartments

17.    In or about February 2020, the Fair Housing Center received a complaint from an Indianapolis resident alleging that the Carlyle Court Apartments refused to rent to a family with minor children. The family, which consisted of two adults and three minor children, alleged that they inquired about renting a two-bedroom apartment at the Carlyle Court Apartments. An agent of defendants stated that the family could not rent a two-bedroom apartment because they had "too many people," or words to that effect.

18.    Upon receiving this complaint, the Fair Housing Center opened an investigation, which included conducting fair housing testing.

19.    On or around July 8, 2020, the Fair Housing Center assigned a fair housing tester to call the Carlyle Court Apartments posing as a potential applicant to inquire about renting a two-bedroom unit. An agent of defendants Sexton Carlyle LLC and M&J Property Management LLC, who identified herself as "Jessica," informed the tester that there was a two-bedroom, two-bathroom unit available that measured 970 square feet, and provided other information concerning amenities, rental rates, and fees. The tester then informed Jessica that she was seeking

6

an apartment for herself, her husband, and their three daughters. Jessica asked the tester to confirm that it would be a household with five people, and stated that the Carlyle Court Apartments would only allow up to four people in a two-bedroom unit. Jessica stated that a sister-property had a three-bedroom townhome, but "we can only accommodate four people," or words to that effect.

20.    The Fair Housing Center continued its investigation in order to determine the extent and scope of defendants' discriminatory occupancy policy.

### C.    The Remington Court Apartments

21.    On or about September 24, 2020, the Fair Housing Center assigned a fair housing tester to call the Remington Court Apartments posing as a potential applicant to inquire about renting a two-bedroom unit. An agent of defendants Remington Court LLC and M&J Property Management, LLC, who identified himself as "Benjamin," informed the tester that there were two such units available soon, and provided rental rates and fee information. Benjamin asked the tester who would be living with her. The tester replied that she was seeking an apartment for herself, her husband, and her three sons. Benjamin then clarified the number of people who would be living with the tester, and stated, "our complex has a fair housing max occupancy of four people in a two-bedroom apartment, so I don't want you to waste money to apply when you won't be able to rent," or words to that effect. The tester asked whether there were any three-bedroom units available at Remington Court, and the agent said no. He suggested other properties in the area that she could try.

22.    The Fair Housing Center then visited the website for the Remington Court Apartments at www.sextonproperties.com/remingtoncourt.com. That website shows floor plans

with square footage for all units offered at the Remington Court Apartments. The square footage for two-bedroom units ranged from 917 to 1075 square feet.

### D.    The Windsor Court Apartments

23.    On or about May 11, 2021, the Fair Housing Center assigned a fair housing tester to call the Windsor Court Apartments posing as a potential applicant to inquire about renting a two-bedroom unit. An agent of defendants Sexton Windsor LLC and M&J Property Management, LLC, who identified herself as "Jessica," informed the tester that there was a waiting list for two-bedroom, two-bathroom units until at least July 2021. The tester asked about the square footage of units that might be available, and Jessica referred the tester to the website, www.windsorcourtapt.com. The tester then informed Jessica that she was seeking an apartment for herself, her husband, and their three daughters. Jessica stated that they allow a maximum of four people per unit and would not "qualify" to rent their apartments. The tester asked if this policy applied regardless of the square footage of the unit. Jessica said, "correct." The tester thanked Jessica and ended the call.

24.    The Fair Housing Center then visited the website, www.windsorcourtapt.com. The website shows that the two-bedroom units at the Windsor Court Apartments range between 920 and 1140 square feet.

### E.    Defendants' numerical occupancy restrictions deviate from local standards

25.    Defendants' numerical occupancy restriction allowing no more than four people in a two-bedroom dwelling is arbitrary, artificial, and unnecessary to achieve a valid interest or legitimate objective. Defendants' rigid two-persons per bedroom maximum is unreasonable in light of HUD guidelines and local housing codes.

26.     The Carlyle Court Apartments and Windsor Court Apartments are located in Marion County, Indiana. The Marion County Housing Code (MCHC) sets minimum standards for the amount of space needed for human occupancy, which is considered sufficient to correct and prevent public health hazards, safety hazards, and other legitimate objectives. The MCHC provides that a dwelling may not be inhabited unless:

> "At least one hundred fifty square feet of floor space shall be provided for the first occupant. An additional one hundred square feet of floor space shall be provided for each additional occupant."

MCHC § 10-801(a).

27.     Using the MCHC standard, more than four persons could legally and reasonably inhabit any and all of the two-bedroom dwellings rented by defendants even if bathrooms, closets, and other non-habitable rooms are excluded from the square footage calculations.

28.     The Remington Court Apartments are located in St. Joseph County, Indiana. That county has adopted the 2020 Indiana Residential Code with State of Indiana amendments ("IRC"). The IRC does not contain any numerical limits for residential occupancy. However, the IRC sets minimum measurements that apply to construction of new residences, including a minimum floor area of not less than 70 square feet, and not less than 7 feet in any horizontal dimension, for all habitable rooms. IRC, Chapter 3, §§ R304.1, R304.2.

29.     Using the IRC standard for new construction, more than four persons could legally and reasonably inhabit any and all of the two-bedroom dwellings rented by defendants at the Remington Court Apartments, even if bathrooms, closets, and other non-habitable rooms are excluded from the square footage calculations.

9

F.    **Discriminatory Effect of Defendants' Numerical Occupancy Restriction**

30.    Defendants' numerical occupancy restriction has a disproportionately adverse affect on families with children. According to the 2019 American Community Survey published by the U.S. Census, the occupancy restriction imposed by defendants results in the exclusion of Hoosiers with minor children at a vastly higher rate than Hoosiers without minor children. The grossly disparate effect on families with children increases with every additional household member, as shown below in Tables 1 through 3:

**Table 1: Disparate Impact in the State of Indiana**

|  | Households with 1-4 people | Households with 5 people | Households with 6 people | Households with 7 or more people |
|---|---|---|---|---|
| Percentage of households with minor children | 35.4% | 94.9% | 97.9% | 98% |
| Percentage of households without minor children | 64.6% | 5.1% | 2.1% | 2.0% |

**Table 2: Disparate Impact in Marion County**

|  | Households with 1-4 people | Households with 5 people | Households with 6 people | Households with 7 or more people |
|---|---|---|---|---|
| Percentage of households with minor children | 35.7% | 95.5% | 99.3% | 99.6% |
| Percentage of households without minor children | 64.3% | 4.5% | 0.7% | 0.4% |

**Table 3: Disparate Impact in St. Joseph County**

|  | Households with 1-4 people | Households with 5 people | Households with 6 people | Households with 7 or more people |
|---|---|---|---|---|
| Percentage of households with minor children | 35.5% | 95.2% | 99.2% | 97.8% |
| Percentage of households without minor children | 64.5% | 4.8% | 0.8% | 2.2% |

31.     As shown in Tables 1 through 3, above, defendants' numerical occupancy restriction results in the exclusion of families with minor children at significantly higher rates than households without minor children.

32.     Defendants' rental records for the Carlyle Court Apartments were provided during an investigation by the Indiana Civil Rights Commission (ICRC), following an administrative complaint that the Fair Housing Center filed. Defendants' records show that, as of August 2021, families with one minor child resided in 25 out of 302 units, or 8%, at the Carlyle Court Apartments. There were zero families with more than one minor child residing at the Carlyle Court as of August 2021.

33.      Rental records for the other two rental properties at issue in this case have not been provided. However, plaintiffs are informed and believe, and allege thereon, that there is a disproportionately low number of households with minor children residing at the Remington Court Apartments and Windsor Court Apartments.

34.     There is a robust causal link between defendants' numerical occupancy restriction and the disproportionately low percentage of families with children residing in the Windsor Court, Carlyle Court, and Remington Court Apartments. There is no other plausible explanation for the discrepancy.

35.     The disparity in the percentages of families with children who reside at these three apartment complexes compared to the general population is significant.

36.     Plaintiff Fair Housing Center was directly injured by defendants' numerical occupancy restriction, as set forth below.

**G.     Injuries**

37.     By reason of defendants' unlawful acts or practices, plaintiff Fair Housing Center has diverted resources: (1) to investigate, evaluate, and determine the extent to which defendants engage in unlawful discrimination in the operation of rental housing; (2) to educate residents about their fair housing rights; and, (3) to prevent continued acts of unlawful discrimination. Defendants' unlawful acts and practices have caused the Fair Housing Center to divert resources from other programs and projects.

38.     Defendants' unlawful acts and practices also have injured the Fair Housing Center by frustrating its mission to serve the public by helping eradicate housing discrimination, ensuring that decent rental housing is made available to all persons without discrimination, and protecting the rights of families with children to rent housing on an equal basis. Defendants' unlawful acts and practices have caused the Fair Housing Center to suffer economic losses and out-of-pocket expenditures in their efforts to counteract the effects of unlawful discrimination based on familial status and to provide outreach and education regarding the rights and obligations of the fair housing laws.

39.     In doing the acts of which plaintiff complains, defendants acted with wanton and conscious or reckless disregard of the federally protected rights of families with minor children. Accordingly, plaintiff is entitled to punitive damages.

40.     There now exists an actual controversy between the parties regarding defendants' duties under the federal and state fair housing laws. Accordingly, plaintiff is entitled to declaratory relief.

41.     Unless enjoined, defendants will continue to engage in the unlawful acts and the pattern or practice of discrimination described above. Plaintiff has no adequate remedy at law. Plaintiff is now suffering and will continue to suffer irreparable injury from defendants' acts and their pattern or practice of discrimination against families with minor children unless relief is

provided by this Court. Accordingly, plaintiff is entitled to injunctive relief.

### H.    Administrative Complaints and Reasonable Cause Determination

42.    On or about July 1, 2021, the Fair Housing Center filed a timely administrative complaint of housing discrimination with ICRC, alleging that defendants engage in discrimination based on familial status in connection with the rental of dwellings at the Carlyle Court Apartments.

43.    On or about July 8, 2021, the Fair Housing Center filed a timely administrative complaint of housing discrimination with the ICRC, alleging that defendants engage in discrimination based on familial status in connection with the rental of dwellings at the Remington Court Apartments.

44.    On or about July 8, 2021, the Fair Housing Center filed a timely administrative complaint of housing discrimination with the ICRC, alleging that defendants engage in discrimination based on familial status in connection with the rental of dwellings at the Windsor Court Apartments.

45.    The ICRC conducted an investigation into the Fair Housing Center's allegations. Following the investigation, the ICRC issued findings that there was "reasonable and probable cause" to believe that the discriminatory practices alleged by Fair Housing Center occurred at each of the subject apartment complexes.

46.    In lieu of litigating these alleged violations in state court or before an ICRC Administrative Law Judge, the Fair Housing Center seeks a determination and remedies through this court. Accordingly, Fair Housing Center intends to withdraw its complaints from the ICRC.

## VI.  CLAIMS

### A.  FIRST CLAIM

### [Fair Housing Act]

47.    Plaintiff realleges and incorporates by reference all previous paragraphs of this complaint herein.

48.    Defendants have injured plaintiff in violation of the federal Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.,* by committing discriminatory housing practices, including but not limited to:

a.      Refusing to rent a dwelling to, or to negotiate for the rental of a dwelling with, any person because of familial status (24 C.F.R. § 100.60(b)(2));

b.      Using different qualification criteria, or rental standards or procedures, because of familial status (24 C.F.R. § 100.60(b)(4));

c.      Engaging in any conduct relating to the provision of housing that otherwise makes unavailable or denies dwellings to persons because of familial status (24 C.F.R. § 100.70(b));

d.      Enacting or implementing procedures, policies, or requirements that restrict or deny housing opportunities or otherwise make unavailable or deny dwellings to persons because of familial status (24 C.F.R. § 100.70(d)(5));

e.      Using a numerical occupancy restriction that is arbitrary, artificial, and unnecessary to achieve a valid interest, and has a significant and disproportionately adverse effect on families with children (24 C.F.R. § 100.500).

## B.  SECOND CLAIM

### [Indiana Fair Housing Act]

49.      Plaintiff realleges and incorporates by reference all previous paragraphs of the complaint herein.

50.      Defendants have injured plaintiff in violation of the Indiana Fair Housing Act by committing discriminatory housing practices including, but not limited to, refusing to rent, refusing to negotiate for rental, or otherwise making unavailable or denying a dwelling to any person because of familial status, in violation of Ind. Code § 22-9.5-5-1.

## VII.  RELIEF

Wherefore, plaintiff prays for judgment against defendants as follows:

1.      That the Court enjoin all unlawful practices complained about herein and impose affirmative injunctive relief requiring defendants, their partners, agents, employees, assignees, and all persons acting in concert with or participating with them, to take affirmative action to provide equal housing opportunities to all tenants and prospective tenants without regard to familial status, including by enjoining defendants from imposing an unreasonable numerical occupancy limit at their rental dwellings that has an unlawful disparate impact on families with

children;

      2.       That the Court declare that defendants have violated the provisions of the applicable federal and state laws;

      3.       That the Court award compensatory and punitive damages to plaintiff according to proof;

      4.       That the Court grant costs of suit to plaintiff, including reasonable attorneys' fees, costs, and expenses; and,

      5.       That the Court grant all such other relief as the Court deems just.

Dated: March 28, 2022.

                    Respectfully submitted,

                    **BRANCART & BRANCART**

                    /s/ Liza Cristol-Deman
                    Liza Cristol-Deman (CA 190516)
                    P.O. Box 686
                    Pescadero, CA 94060
                    lcristoldeman@brancart.com
                    Tel: (650) 879-0141
                    Fax: (650) 879-1103

                    Attorney for Plaintiff