UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| FAIR HOUSING CENTER OF CENTRAL INDIANA, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 1:22-cv-00612-TAB-JPH ) |
| M&J MANAGEMENT COMPANY, LLC, d/b/a THE SEXTON COMPANIES, SEXTON CARLYLE LLC, REMINGTON COURT LLC, SEXTON WINDSOR, LLC, | ) ) ) ) ) ) |
| Defendants. | ) |

**ORDER ON DEFENDANTS' MOTION TO PRECLUDE EXPERT TESTIMONY OF PLAINTIFF'S EXPERT JAMES COLBERT**

**I.    Introduction**

Plaintiff Fair Housing Center of Indiana claims that Defendants[1] discriminate against families with minor children in violation of the Fair Housing Act and Indiana Fair Housing Act. Defendants seek to preclude Plaintiff from using the expert report and proffered expert testimony of James Colbert. [Filing No. 84.] Defendants argue that Colbert lacks proper training and qualifications to render an opinion regarding causation in a fair housing case, his report consists of unsupported factual and legal conclusions, and his testimony is unreliable and unhelpful. While some of Colbert's conclusions can reasonably be questioned, the Court will allow Colbert to testify at the upcoming bench trial. Colbert's testimony can be vetted by cross examination,

---

[1] M&J Management Company, LLC, Sexton Carlyle, LLC, Remington Court, LLC, and Sexton Windsor, LLC

and the Court can disregard any testimony it finds inappropriate. Thus, for the reasons explained below, Defendants' motion to preclude Colbert is denied.

## II. Background

Defendants own and operate multiple multi-family housing units in Indianapolis and St. Joseph County, Indiana. Defendants have an occupancy standard of two occupants per bedroom that applies to all floor plans, regardless of the age of the occupants. Plaintiff alleges that Defendants' occupancy standard violates the Fair Housing Act and Indiana Fair Housing Act because it discriminates based on familial status. [Filing No. 1.] In March 2024, Defendants and Plaintiff filed cross-motions for summary judgment. [Filing No. 67; Filing No. 70.] At that time, Plaintiff proffered James Colbert as its expert to analyze whether Defendants' occupancy standards have a disproportionate effect on households with minor children. [Filing No. 70-24.] While Defendants argued that Colbert's findings were based on flawed logic and incomplete analysis, Defendants did not challenge the admissibility of Colbert's report in the summary judgment briefing.

Instead, Defendants waited until July 30, 2024, to move to preclude Colbert's Rule 26 expert report and to exclude his testimony in this case. [Filing No. 84.] The Court issued an order on August 1, 2024, finding Defendants' motion untimely for summary judgment purposes. [Filing No. 86.] However, the Court stated that it would treat Defendants' motion as a *Daubert* motion related to trial. On August 19, 2024, the Court denied the parties' cross-motions for summary judgment. [Filing No. 89.] The Court now addresses Defendants' pending motion to exclude Colbert in relation to the bench trial scheduled for November 12, 2024.

**III.     Discussion**

Defendants challenge Colbert's expert report and testimony, arguing his opinion consists primarily of unsupported factual and legal conclusions.  [Filing No. 85, at ECF p. 1.]  Rule 702 sets forth the general framework for the admissibility of expert testimony, and provides that a witness who is qualified as an expert based on knowledge, skill, experience, training, or education may provide opinion testimony so long as the proponent demonstrates to the Court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The Supreme Court interpreted Rule 702 in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 125 L. Ed. 2d 469, 113 S. Ct. 2786, 2795 (1993), to mandate that the district court "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."

> In performing its gatekeeper role under Rule 702 and *Daubert*, the district court must engage in a three-step analysis before admitting expert testimony. It must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.  In other words, the district court must evaluate: (1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony.

*Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (internal citations and quotation marks omitted).  See also *Kopplin v. Wisconsin Cent. Ltd.*, 914 F.3d 1099, 1103-04 (7th Cir. 2019) ("The ultimate question is whether the expert's approach is scientifically valid, which requires a careful examination of its evidentiary relevance and reliability.  The focus is on

the expert's methodology, not his ultimate conclusions." (Internal citation and quotation marks omitted)).

As a preliminary matter, the Court must consider whether to even address the merits of Defendants' motion, because Plaintiff indicates that the scope of Colbert's report is limited to the second element in Plaintiff's *prima facie* case. [Filing No. 96, at ECF p. 4.] As noted above, Defendants belatedly challenged Colbert's report when cross-motions for summary judgment were pending. In the Court's order denying the cross-motions, the Court concluded Plaintiff established its *prima facie* case. [Filing No. 89, at ECF p. 14.] However, in reaching this conclusion at summary judgment, the Court considered the facts in the light most favorable to Plaintiff, without addressing whether Colbert was qualified or whether his opinions were supported. Now, this matter is before the Court in relation to the upcoming bench trial. While Defendants filed their motion to preclude Colbert's testimony too late to address his qualifications at summary judgment, the Court will address Defendants' concerns now, before trial. Given that the summary judgment standard is no longer at play, the Court is not bound by its summary judgment findings and instead takes a fresh look at Colbert's report.

Defendants first argue that Colbert is not qualified to give expert opinions on the issue of fair housing. [Filing No. 85, at ECF p. 6.] Under *Daubert*, to be qualified under Rule 702, a proffered expert's knowledge must have "a grounding in the methods and procedures of science." *Daubert*, 509 U.S. at 590. Defendants claim that Colbert has no experience, training, or education regarding the ownership and management of apartment complexes, the psychology behind tenants choosing where to live, and fair housing laws, and his background as a data analyst cannot support his opinions regarding apartments' occupancy rules. [Filing No. 85, at ECF p. 7.] However, Colbert does not offer opinions on topics or rely on any data that would

4

require more extensive knowledge of apartment management, housing choice, or fair housing laws.  Rather, Plaintiff acknowledges that it retained Colbert for the sole purpose of "crunching numbers and calculating relative impacts between various demographic groups."  [Filing No. 96, at ECF p. 6.]  Both sides agree that Colbert's background is in data analysis.  Colbert's CV indicates that he has a master's degree and has worked within the professional field of data analysis, including in-depth analysis of census data, for over 20 years.  [Filing No. 70-24, at ECF p. 13.]  This constitutes sufficient academic and practical expertise to qualify as an expert in the field in which he seeks to testify—data analysis and statistical disparity.  If Defendants doubted Colbert's qualifications, they could have taken his deposition to inquire further into his experience and expertise.  However, they did not do so during the expert discovery period.

       Defendants next argue that Colbert's opinion will not assist the trier of fact.  [Filing No. 85, at ECF p. 9.]  Defendants claim that Colbert's report is not helpful and is simply a layman's opinion, speculative, and based on little more than broad census data.  [Filing No. 85, at ECF p. 9.]  In response, Plaintiff notes that while perhaps a lay witness could gather and analyze census data in relation to this case as Colbert has done, Defendants inevitably would have then objected that such testimony calls for an expert's opinion.  [Filing No. 96, at ECF p. 6-7.]  Rather, Plaintiff has procured the work of a data analyst, who is adept at locating census data and applying statistical methods.

      Relatedly, Defendants also argue that Colbert will mislead and confuse the *jury* in this case.  [Filing No. 85, at ECF p. 10, 16.]  However, this matter is set for a bench trial, not jury trial.  "In a bench trial, once the court has fulfilled its gatekeeping function, it becomes a trier of fact that needs to assess the evidence itself—not just the methodology underlying that evidence."  *Kawasaki Kisen Kaisha, Ltd. v. Plano Molding Co*., 782 F.3d 353, 360 (7th Cir. 2015).  *See also*

5

*Evansville Marine Service, Inc. v. Thurby*, No. 3:20-cv-00152-RLY-MPB, 2022 WL 22696231, at *1 ("[D]uring a bench trial like this one the court need not make any reliability determinations before evidence is presented.  That is because the court's gatekeeping role is necessarily different as the fact finder and the gatekeeper are the same unlike in a jury trial.  Put differently, the usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise when a district court is conducting a bench trial."  (Internal citations, quotation marks, and ellipses omitted)).  Thus, whether Colbert will assist the Court, as a trier of fact, is not a concern at this stage.

     A closer question, however, is whether Colbert's methodology is scientifically reliable.  Under Rule 702, a proffered expert's testimony must be based upon "sufficient facts or data" and be "the product of reliable principles and methods" which have been reliably applied to the "facts of the case."  Fed. R. Civ. P. 702(b)-(d).  Defendants argue that Colbert failed to conduct the testing necessary to determine whether Defendants' occupancy standard caused a disproportionate exclusion of families with minor children from accessing housing.  [Filing No. 85, at ECF p. 12.]  In addition, Colbert failed to incorporate extraneous factors in his analysis, and he did not consider alternative reasons why a household may decide not to live in Defendants' apartment complexes.  Instead, Colbert relies heavily on the opinion that all households in the relevant geographical groups that desired to live at Defendants' apartment complexes were unable to do so because of Defendants' occupancy standard.

     The Court agrees that Colbert failed to consider any extraneous factors or other variables.  Colbert's report does not consider potentially key additional relevant factors that might have explained the lack of families with children choosing to live at Defendants' complexes, such as the fact that these apartments had less square footage, small appliances, no backyard, and

6

limiting parking. Nevertheless, Plaintiff argues that the existence of other potential causes or explanations for the low number of households with children at Defendants' complexes is irrelevant to Colbert's analysis, because his analysis focused on the predictable effect of the occupancy cap on the rental household population of Indiana, Marion County, and St. Joseph County. [Filing No. 96, at ECF p. 9-10.] In addition, Plaintiff calls Defendants' argument "guesswork" and contends that any extraneous factors may go to the weight of Colbert's testimony, but not the reliability. [Filing No. 96, at ECF p. 11-12.]

Defendants' concerns regarding Colbert's report are well founded. The fact that Colbert never addresses any potential extraneous factors certainly casts doubt on the reliability of his opinion. However, ultimately, the Court agrees with Plaintiff that these concerns do not completely exclude Colbert from testifying at trial. At trial, the Court will be able to weed through the parties' arguments regarding whether Colbert's testimony and report demonstrate causation, a predictable effect, or something else. Defendants—and the Court—will press Colbert on why he failed to consider any alternative explanation or major variable and can test the reliability of his testimony. With the benefit of this crucible, the Court can then decide the amount of weight to which Colbert's opinion is entitled.

Similarly, Colbert's report also does not define "rental household." [Filing No. 70-24.] Colbert's report states that the percentage of children living at Defendants' complexes is lower than other rental households in the counties in which the complexes are located, but he does not explicitly define "rental household." It appears that rental household includes all rental dwellings in the respective counties, including rental houses, rental townhomes, rental duplexes, rental lofts, and other rental multi-family apartment complexes with larger square footage, elevated appliances, and more parking options. Nevertheless, Colbert's report does not take into

7

consideration the idea that households with more occupants, which tend to include households with children, may prefer to live in homes with larger square footage than the options available at Defendants' complexes.

However, two points bear noting.  First, Defendants do not dispute the existence of their two-per-bedroom occupancy policy.  Second, Colbert primarily relied on American Community Survey Public Use Microdata Sample (PUMS) data obtained from the United States Census. [Filing No. 70-24, at ECF p. 10.]  Defendants have not offered any argument that using census or PUMS data was improper.  Likewise, the Court cannot conclusively say Colbert's calculations are speculative simply because they are grounded in PUMS data and Defendants' own data about their residents.  Defendants' concerns, while valid, can be addressed through cross examination at trial, and further inquiry, if needed, from the Court.

One final, related observation.  Plaintiff seems to believe it can introduce Colbert's report as evidence at the upcoming bench trial.  [Filing No. 96, at ECF p. 15 ("For the reasons set forth above, the Court should not preclude the report of Plaintiff's expert James Colbert, or exclude his testimony at trial.).]  While the Court has concluded that Colbert may testify at trial, Plaintiff cannot introduce the report itself at trial.  It is inadmissible hearsay.  *See, e.g., MYR Equipment, LLC v. Plant Site Logistics, Inc.*, No. 1:17-cv-00463-JPH-DLP, 2022 WL 137974, at *3 ("Here, Mr. Ross's report is a written statement that Mr. Ross prepared outside of court, and MYR's purpose for offering it into evidence is to prove the truth of the matter contained within the report—the value of the damaged equipment.  MYR has not identified an applicable hearsay exception or argued that the report has any non-hearsay purpose.  Therefore, the report is inadmissible at trial.").  Colbert can testify about the opinions in his report, and Defendants may

8

use Colbert's report to cross examine him and attempt to impeach him. However, Plaintiff cannot introduce Colbert's report as evidence.

## IV. Conclusion

The Court recognizes Defendants' concerns and agrees that the value of Colbert's testimony is uncertain. Nevertheless, Defendants' motion to preclude Colbert's testimony is denied. [Filing No. 84.] This case remains set for a final pretrial conference at 1:30 pm on October 29, 2024, and for a bench trial on November 12, 2024.

Date: 10/10/2024

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email