**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| FAIR HOUSING CENTER OF CENTRAL INDIANA, INC., | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CASE NO. 1:22-cv-00612 |
| | : | |
| M&J MANAGEMENT COMPANY, LLC, et al., | : | |
| | : | |
| Defendants. | : | |

## DEFENDANTS' MOTION FOR TAXATION OF COSTS AND ATTORNEY'S FEES

The Defendants, M&J Management Company, LLC, d/b/a The Sexton Companies, Sexton Carlyle, LLC, Remington Court, LLC, and Sexton Windsor, LLC (collectively, the "Defendants" or "M&J Management"), by counsel, pursuant to Fed. R. Civ. P. 54(d), S.D. Ind. L.R. 54-1, U.S.C. § 3613(c)(2), and Ind. Code § 22-9.5-9-1 and this Court's February 5, 2025, Order Following Bench Trial (Dkt. 140) and Final Judgment (Dkt. 141) (collectively "Final Order and Judgment), hereby file their ***Motion for Taxation of Costs and Attorney's Fees*** against Plaintiff, Fair Housing Center of Central Indiana, Inc. ("FHCCI").

## I.    RELEVANT PROCEDURAL HISTORY

In 2022, FHCCI filed a lawsuit in the Southern District of Indiana against M&J Management alleging discriminatory housing practices in violation of the federal Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601 *et seq*., and the Indiana Fair Housing Act ("IFHA"), Ind. Code § 22-9.5-5-1 based on familial status due to M&J Management's occupancy policy of no more than two occupants per bedroom ("M&J Management's Occupancy Standard"). (Dkt. 1).

This lawsuit stems from a single complaint by a man who is neither a party to the case nor ever attempted to rent an apartment from M&J Management. "Plaintiff received a complaint related to Defendants' occupancy standard from a man who alleged that someone from the Carlyle Court Apartments told his stepson's household—comprised of two adults and three minor children—that they had too many people to rent a two-bedroom apartment. Neither the man who called Plaintiff nor his stepson are parties in this case." (Order Following Bench Trial, Dkt. 140, at p. 9). Instead, FHCCI brought the lawsuit alleging that it was injured by M&J Management's Occupancy Standard.

Prior to initiating litigation, FHCCI attempted to solicit potential grieved tenants to participate in FHCCI's campaign against M&J Management. Their attempts failed. Specifically, FHCCI "mailed letters to all current and former tenants at the Carlyle Court, Windsor Court, and Remington Court, but Plaintiff did not receive any response from residents at these properties related to familial status or Defendants' occupancy standard." (Dkt. 140, at p. 10).

Throughout the course of litigation, FHCCI engaged in extensive discovery. FHCCI''s discovery efforts included the 30(b)(6) deposition of M&J Management's corporate representative on two different occasions, a deposition of M&J Management's expert witness, multiple written discovery requests including requests for admission, requests for production of documents, and two sets of interrogatories, M&J Management's production of over 30,000 documents, and a two-day Rule 34(a)(2) inspection of the Windsor Court apartments, Remington Court apartments, and Carlyle Court apartments.

In November 2024, a three-day bench trial occurred. The Court found against FHCCI on all counts and issued an order in favor of M&J Management. (Dkt. 40 & 41). In the Final Order and Judgment, the Court found FHCCI's expert must be excluded under the standards imposed

by the federal court. Even if FHCCI's expert was not excluded, FHCCI could not establish a prima facie case of housing discrimination. Even if FHCCI could establish a prima facie case, M&J Management met its burden of showing that M&J Management had multiple, legitimate, non-discriminatory reasons for implementing and maintaining M&J Management's Occupancy Standard and FHCCI failed to demonstrate less discriminatory alternatives. (Dkt. 40).

No local, state, or federal law states that implementing a two-per-bedroom occupancy standard is illegal.

> Occupancy policies limiting occupants to two persons per bedroom are legal and common standards in property management. No federal law prevents apartment owners and managers from implementing occupancy standards. Neither the Fair Housing Act nor the United States Department of Housing and Urban Development has an explicit standard or rule governing numerical occupancy restrictions imposed by a housing provider.

(Dkt. 140, at p. 7).

> The Marion County Code lists the maximum number of occupants allowed to occupy a unit based on square footage. Defendants are not currently violating any local law or ordinance, including Marion County. As long as an apartment does not exceed the number of occupants per square footage, the complex is in compliance with Marion County Code. Nothing in the Marion County Code prevents apartment owners from establishing more strict occupancy standards, either.

(Dkt. 140, at p. 9).

At the conclusion of trial, FHCCI admitted that M&J Management's Occupancy Standard did not violate any law. More, FHCCI still could not articulate what occupancy policy it desired M&J Management to implement as a result of the litigation.

> At trial, the Court asked Plaintiff what specific relief they were seeking, and Plaintiff stated it seeks a declaratory judgment that Defendants' current occupancy restriction violates the FHA, and that it wants Defendants to adopt a reasonable occupancy

- 3 -

> restriction that is consistent with the local code or ordinance in the
> area where the property is located. Plaintiff acknowledged that
> Defendants' occupancy restriction does not violate local ordinances
> or codes, but argued they could use the code in a way that would
> allow them to increase occupancy.

(Dkt. 140, at p. 25).

Prior to trial, on August 16, 2024, M&J Management submitted evidence that at least one

Indiana municipality—a municipality where M&J Management has multiple locations—actually

maintains an ordinance where allowing more than two occupants per bedroom results in a

violation. (Dkt. 88). M&J Management also informed FHCCI prior to trial that M&J

Management received warning letters and verbal reprimands from local authorities in the Town

of Speedway related to potential violations. (Dkt. 88).

> ". . . the Town of Speedway, Indiana has an occupancy policy that
> requires no more than two persons per bedroom, not including
> persons under the age of one. Defendants operate properties within
> or on the line of the Town of Speedway, but none of those
> properties are at issue in this lawsuit.")

(Dkt. 140, at p. 9, n. 3). At trial, FHCCI admitted that the Town of Speedway has a separate

occupancy code and that M&J Management maintaining an occupancy policy that complies with

local code is of utmost importance. (Dkt. 137-1, Tr. Vol. I, at 168:2-25).

FHCCI is not a new plaintiff. FHCCI frequently pursues fair housing claims as part of its

business model, with 25% of its costs being reimbursed through enforcement actions. (Dkt. 137-

1, Tr. Vol. I 170:6-19; 171:22). Since 2016, FHCCI has filed at least twelve cases in the

Southern District of Indiana. (1:16-cv-00300-LJM-DML; 1:16-cv-00785-TWP-DML; 1:16-cv-

00339-WTL-TAB;   1:16-cv-00880-WTL-DML;   4:16-cv-00195-RLY-DML;   1:17-cv-01782-

JMS-TAB;  1:18-cv-01098-JMS-DLP;  1:20-cv-01176-TWP-TAB;  1:20-cv-02035-JPH-TAB;

1:21-cv-02594-JPH-MJD; 1:22-cv-00612-TAB-JPH; 1:23-cv-00860-RLY-CSW). Many of these

cases involve the same counsel involved in this litigation.

## II.    ARGUMENT

Rule 54(d) states in relevant parts as follows:

> **(1) Costs Other Than Attorney's Fees.** Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party. . . .
>
> **(2) Attorney's Fees.**
>
>> (A)    Claim to Be by Motion. A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.

"[T]o be a 'prevailing party,' a litigant must have obtained a judgment on the merits, a consent decree, or some other judicially sanctioned change in the legal relationship of the parties." *Palmetto Properties, Inc. v. County of DuPage*, 375 F .3d 542, 548 (7th Cir.2004) (citing *Buckhannon Bd. and Care Home, Inc. v. West Va. Dep't of Health & Human Servs.*, 532 U.S. 598, 604–605 (2001)).

According to the Fair Housing Act, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs." 42 U.S.C. § 3613(c)(2). Similarly, under Ind. Code § 22-9.5-9-1, the court may award "reasonable attorney's fees to the prevailing party and assess court costs against the nonprevailing party."[1]

"There is a presumption that the prevailing party will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." B*eamon v. Marshall & Ilsley Tr. Co.*, 411 F.3d 854, 864 (7th Cir. 2005). This presumption "is difficult to overcome" and therefore, "the district court's discretion is narrowly confined—the court must

---

[1] The IFHA "borrows heavily from" the FHA, "containing many parallel provisions and similar language" and "in construing the IFHA, we look to federal statutes and case law for guidance." *Wilson v. Wilkening*, 175 N.E.3d 1169, 1173 (Ind. Ct. App. 2021).

award costs unless it states good reasons for denying them." *Weeks v. Samsung Heavy Indus. Co.,* 126 F.3d 926, 945 (7th Cir. 1997).

A district court's discretion not to grant attorney's fees and costs in civil rights cases is tightly cabined. *See Newman v. Piggie Park Enters., Inc*., 390 U.S. 400, 402 (1968) ("It follows that one who succeeds in obtaining an injunction under that Title should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.").

Defendants face a slightly different standard under the FHA in order to obtain attorney's fees. A prevailing defendant must show the plaintiff's actions were "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Hughes v. Rowe*, 449 U.S. 5, 15 (1980) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978)). "The Supreme Court adopted the *Christiansburg* standard wholesale for application in civil rights cases." *Coates v. Bechte*l, 811 F.2d 1045, 1049 (7th Cir. 1987)(applying the standard to determine whether a prevailing defendant may recover attorney's fees from the plaintiff under § 1988).

"Civil rights plaintiffs should nevertheless take heed that the Supreme Court has indicated that an award of attorney's fees to the prevailing defendant may be warranted if a plaintiff continues to litigate after it becomes clear that his action lacks factual substance." *Coate*, 811 F.2d at 1053(citing  *Hughes*, 449 U.S. at 15). It is true that "factual developments arising during the course of the litigation can render a suit frivolous and thus justify an award of fees in the event the plaintiff proceeds with the case." *Hamer v. Lake County*, 819 F.2d 1362, 1367-68 (7th Cir. 1987). "An award of fees is justified when a plaintiff continues to litigate . . . after a claim clearly became baseless." *Fahey v. Creo Products, Inc*., No. 96 C 5709, 1998 WL 474114, at *2 (N.D. Ill. Aug. 4, 1998)(granting defendant's summary judgment motion and

- 6 -

motion for attorney's fees because the plaintiff's "Title VII claim lacked any evidentiary support" and a "claim unsupported by evidence is by definition frivolous in both legal and factual terms.")

While it is helpful, "[a]n award of attorney's fees to a prevailing defendant is not dependent upon a showing that the plaintiff commenced the action in bad faith." *Coates,* 811 F.2d at 1049 (citing *Tarkowski v. County of Lake*, 775 F.2d 173, 176 (7th Cir.1985)); *Kennedy v. McCarty*, 803 F.Supp. 1470, 1473 n.1 (S.D.Ind.1992) ("A showing of subjective bad faith is not required to allow a defendant to recover fees . . . Courts have noted, however, that a finding of subjective bad faith makes the existence of a frivolous suit more clearly apparent."). The "standard was designed to strike a careful balance between the desire to encourage private litigants with valid claims to bring suit to vindicate civil rights and the need to deter frivolous actions brought primarily to harass the defendant without hope of success." *Coates,* 811 F.2d at 1049-50.

Even indigent plaintiffs are required to pay attorney's fees if a prevailing defendant establishes its burden. "[T]he indigence exception 'is a narrow one' and 'is not a blanket excuse for paying costs.'" *Richardson v. Chicago Transit Authority*, 926 F.3d 881, 893 (quoting *Rivera v. City of Chicago*, 469 F.3d 631, 635–36 (7th Cir. 2006)).

### A. Defendants Stand Entitled To Recover Their Costs And Attorney's Fees Because Basic Research Shows That Defendants' Occupancy Standard Is Legal Under Indiana And Federal Law

Basic research should have revealed to a reasonable plaintiff in FHCCI's position that M&J Management's Occupancy Standard did not violate any local, state, or federal law. FHCCI is familiar with the legality of housing practices in the state of Indiana and used legal counsel who specializes in fair housing matters. Undoubtedly, FHCCI was familiar with the Marion

County Housing Code and Indiana Residential Code as it cited both codes in the Complaint. (Dkt. 1, at ¶¶ 14 & 26-27). Neither code states that an occupancy policy of two persons per bedroom is a violation. Indiana law expressly provides that landlords are not prohibited from "refusing to rent a rental unit on the basis of a reasonable occupancy standard" and presumes that an occupancy policy of two persons per bedroom is reasonable in certain situations. Ind. Code 32-31-8-7(c). FHCCI ignored local and state law, instead demanding that M&J Management change its occupancy standard to whatever standard FHCCI fabricated.

Even if the FHCCI did not know that M&J Management's Occupancy Standard was reasonable under Indiana law at the outset of the case, FHCCI was put on notice prior to trial that at least one relevant Indiana municipality, the Town of Speedway, prohibited M&J Management from increasing its occupancy standard beyond two persons per bedroom. Thus, FHCCI's continued litigation was without legal support.

M&J Management is entitled to be reimbursed for the attorney's fees and costs because it was not reasonable for FHCCI to believe the M&J Management's actions constituted a violation of the FHA or IFHA. FHCCI's initiation of this lawsuit, and certainly its continuance, was frivolous, unreasonable, and groundless.

**B. Defendants Stand Entitled To Recover Their Costs And Attorney's Fees Because Neither FHCCI Nor Any Other Person Was Ever Under A Threat Of Injury From Defendants' Occupancy Standard And FHCCI Brought This Lawsuit Just To Recover Costs For Unrelated Work.**

A plaintiff must not be able create an injury through its own frivolous pre-litigation and legal actions. FHCCI's "injuries" resulted exclusively from FHCCI attempting to investigate and litigate FHCCI's frivolous claims related to M&J Management's Occupancy Standard.

- 8 -

FHCCI never put forward evidence that any current, past, or prospective tenant was injured by M&J Management's Occupancy Standard. Before the lawsuit was even filed, FHCCI attempted to find former, current, or prospective tenants who were injured by M&J Management's Occupancy Standard and wished to pursue claims against M&J Management. FHCCI's attempts were unsuccessful. Even the original complainant did not wish to pursue any legal claims against M&J Management. That no tenant wished to pursue this litigation should have put a reasonable plaintiff—and certainly a plaintiff with as much litigation experience as FHCCI—on notice that the claims might be frivolous, unreasonable, or groundless.

The evidence shows that FHCCI, no stranger to the Courts or lawsuits, brought the instant lawsuit merely to harass M&J Management and, in the process, earn money. At trial, FHCCI acknowledged that M&J Management's Occupancy Standard did not violate local ordinances or codes. More, after years of litigation and discovery FHCCI still could not specify what occupancy policy it wanted M&J Management to adopt—a clear indication that FHCCI had ulterior motives for filing this litigation.

### C. Defendants Stand Entitled To Recover Their Costs And Attorney's Fees Because FHCCI Continued To Litigate After It Becomes Clear That Its Action Lacked Factual And Legal Substance.

FHCCI continued to litigate after its claims clearly became baseless. An award of attorney's fees to the prevailing defendant is warranted if a plaintiff continues to litigate after it becomes clear that his action lacks factual substance. *Munson v. Friske*, 754 F.2d 683, 697 (7th Cir. 1985)(affirming the district court did not abuse its discretion in awarding attorney's fees to prevailing defendants pursuant to § 1988 after finding that despite three years of discovery, the plaintiff produced no evidence to substantiate his claims and was just resting upon speculation,

innuendo, and suspicion); *Clark v. Oakhill Condo. Ass'n, Inc.*, No. 3:08-CV-283 RM, 2011 WL 1296719, at *5 (N.D. Ind. Mar. 31, 2011)(concluding that defendants are entitled to be reimbursed for the attorney fees because despite the "'many hours' investigating and researching the facts and the law relating to their claim" it was not reasonable for the plaintiffs to believe the defendant's actions constituted evidence of intentional race-based housing discrimination and while "a 'loser pays' rule shouldn't be used to impose a 'chilling effect' on future litigants attempting to vindicate their rights under the federal and state fair housing acts," both statutes specifically permit an award of fees to a prevailing defendant when the defendant has shown the plaintiff's claims to be frivolous or continued litigation to be unreasonable).

Assuming FHCCI was not aware of the frivolous nature of their suit from the outset of the litigation, the frivolous nature should have become apparent to FHCCI throughout the course of the litigation. FHCCI engaged in extensive discovery by which M&J Management turned over tens of thousands of documents. Notwithstanding, FHCCI found no evidence of intentional discrimination or indications that M&J Management used the occupancy standard to evade housing families with children. Rather, the evidence consistently showed that M&J Management housed families with children at all locations, promoted children-friendly amenities, and did not violate local codes and ordinances. In at least August of 2024, FHCCI was on notice that increasing the occupancy standard beyond two-per-bedroom actually violated local Indiana law. Even FHCCI's expert could not state that M&J Management's Occupancy Standard caused a disparate impact on families with children, part of FHCCI's prima facie case. FHCCI continued to litigate the case even though a basic conversation with FHCCI's own expert should have notified FHCCI that its claims were baseless. Because FHCCI, a sophisticated and

- 10 -

knowledgeable litigator, continued to prosecute its claims based on scant evidence, an award of fees is justified.

### D. Defendants Stand Entitled To Recover Their Costs And Attorney's Fees Because the Costs and Fees are Reasonable.

For the reasons described in this Motion, FHCCI's claims against M&J Management stand revealed as frivolous, unreasonable and without foundation. Due to FHCCI's lawsuit, M&J Management was exposed to liability and potential injunctive relief that would cause extreme burden and expense to M&J Management's business. M&J Management had no choice but to expend substantial resources to defend itself in this Court. *See, e.g., Matthews v. Wisconsin EnergyCorp., Inc.*, 642 F.3d 565 (7th Cir. 2011)(in determining the reasonableness of fees a court looks "to the aggregate costs in light of the stakes of the case and opposing party's litigation strategy").

Specifically, M&J Management incurred the deposition fees/ costs/ expenses in the amount of $2,530.65, which are recoverable under Fed. R. Civ. P. 54(D). (*See* Bill of Costs, attached hereto as ***Exhibit 1***.) M&J Management, the prevailing party in the instant case, incurred these costs in the regular course of litigation, which costs were reasonable and necessary to defend claims made against them by FHCCI and stands entitled to the recovery of the same for the reasons stated herein.

As noted in the Declaration of Catherine L. Strauss (attached hereto as ***Exhibit 2***), M&J Management incurred $494,709.53 in attorney's fees and related costs in this action. M&J Management requests that the Court award them the attorney's fees pursuant to Fed. R. Civ. P. 54(d), S.D. Ind. L.R. 54-1, U.S.C. § 3613(c)(2), and Ind. Code § 22-9.5-9-1.

The attorney's fees M&J Management requests are reasonable. *See* Declaration of Catherine L. Strauss.  "The best evidence of whether attorney's fees are reasonable is whether a party has paid them."  *Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008).  Defendants are seeking only attorney fees and costs that it has paid.

## III.    CONCLUSION

For the reasons stated herein and the Bill of Costs filed contemporaneously herewith, M&J Management, by counsel, petition the Court for a taxation of costs, in the amount of $2,530.65, and assessment of attorney's fees and costs in their favor and against FHCCI, in the amount of $494,709.53, and the award of all other just and proper relief. If the Court finds in favor of M&J Management on its Motion for Taxation of Costs and Attorney's Fees, M&J Management will provide copies of invoices and receipts for the Court's review.

Respectfully submitted,

*/s/ Catherine L. Strauss*
Catherine L. Strauss, Ohio Atty No. 0072980
Hannah Oates, Attorney No. 36919-22
Catherine.Strauss@icemiller.com
Hannah.Oates@icemiller.com

*Attorneys for Defendants M&J Management Company, LLC, d/b/a The Sexton Companies, Carlyle LLC; Remington Court LLC; Sexton Windsor, LLC*

ICE MILLER LLP
One America Square, Suite 2900
Indianapolis, IN 46282-0200

- 12 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 19, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system to all attorneys of record.


*/s/ Catherine L. Strauss*
Catherine L. Strauss

ICE MILLER LLP
One America Square, Suite 2900
Indianapolis, IN 46282-0200
Phone: (317) 236-2100